## Richmond

GENT'S EXECUTRIX V. PRUNER'S ADMINISTRATOR.

November 20, 1913.

Absent, Buchanan and Whittle, JJ.

1. HUSBAND AND WIFE—*Wife's Land—Judgment Against Husband— Case in Judgment.*—The evidence in the case in judgment shows that no part of the purchase money for a house and lot sought to be subjected to the lien of a judgment against a husband was paid by him. He was never in a condition to pay it. On the contrary, the purchase was negotiated by the wife, the consideration was furnished by her, she was the reputed owner of the property, and, when sold to another, before she had acquired the legal title, the sale was negotiated by her. The husband had no interest in the property, and it is not liable to the lien of a judgment obtained against him.

Appeal from a decree of the Circuit Court of Russell county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*S. B. Quillen* and *H. A. Routh,* for the appellant.

*W. W. Bird,* for the appellee.

KEITH, P., delivered the opinion of the court.

J. C. Gent, at the March term, 1887, of Russell circuit court, recovered a judgment against George A. Pruner for $125, with interest from the 20th day of April, 1882, until paid. This judgment was docketed and has been

kept alive by the issuance of executions, and at the second November rules of the circuit court of Russell county a bill was filed to subject to its payment a tract of land which, it is alleged, Pruner owned after the judgment was obtained against him.

This land had been sold during Pruner's lifetime to one J. P. Speer, and a deed was made for it, in which Fields and wife, from whom the land had been purchased, united with George A. Pruner and his wife so as to convey Speer a complete title. Speer sold the land to Hensdill, and the bill makes the representatives and heirs of George A. Pruner, deceased, J. P. Speer, W. A. Fields, J. D. Hensdill, and Virginia Pruner, the widow of George A. Pruner, parties defendant. None of the parties answered except Speer, Fields and Hensdill. They deny that Pruner purchased from Fields, or anyone else, the tract of land in the bill mentioned, but aver that the property was purchased by Mrs. Pruner, the wife of George A. Pruner, who paid the purchase money out of her own separate estate, and that George A. Pruner had no money with which to buy this or any other tract of land; and they claim that Mrs. Jennie Pruner was the sole purchaser of the property from W. A. Fields.

The facts seem to be as follows: Mrs. Virginia Pruner negotiated with Fields, who was the original owner of the house and lot in dispute, for its purchase. The bargain was made with her and the money in large part paid by her. Her husband was in very narrow circumstances, and the strong tendency of the evidence is to show that he never had the means to make and did not make payment for the land. As we have said, the negotiation for the purchase from Fields was made by Mrs. Pruner; the purchase price was $825; she was unable to pay the whole of it, and called upon Joseph A. Pruner, the son of George Pruner by a former marriage, to aid her in the matter,

which he did, and the whole purchase price was paid to Fields, but for some cause a deed was not promptly made to the purchasers by him.    After a time the property was sold by Mrs. Pruner to J. P. Speer for the price of $1,500, who paid for it by two checks on the Citizens National Bank, Lebanon, Va., both of which are dated November 21, 1906, one payable to J. A. Pruner for $800 and the other to Jennie Pruner for $700.    This distribution of the purchase money between Joseph A. Pruner and Jennie Pruner was in accordance with her direction.    She made the sale to J. P. Speer and she apportioned the purchase money between Joseph A. Pruner, her stepson, and herself, and Speers gave his checks in accordance with her direction.    As far as we can gather from the facts, this was a just and proper settlement of the transaction by which Joseph A. Pruner was reimbursed for the advance that he had made, and Mrs. Pruner received that which she had paid.    When the deed came to be made, the title still being in W. A. Fields, who had been fully satisfied by the payment to him of the price at which he had sold the land to Mrs. Pruner, he and his wife united in the deed to Speer in order to give him a complete title.

There is no satisfactory evidence that we have been able to discover of any money passing from George A. Pruner to his wife, or to W. A. Fields, or to anyone else.    He was a very old man, was a saddler and harness-maker by trade, and, so far as this record shows, never had any money in advance of necessities of life which he could have applied to the purchase of this property.    The only evidence of his having any money at all is that prior to his marriage to Virginia Pruner, which occurred when both he and she were well stricken in years, he sometimes gave to her trifling sums of money, the amount of which is nowhere stated.    We have been unable to fasten upon anything in the record which shows that he ever made any such pay-

ment upon the land, or ever had any such interest in it as could be bound by the lien of the judgment against him. On the other hand, the strong preponderance of proof is that Mrs. Pruner bought the land in her own name; that she paid for it in part; that the residue of the purchase price was paid by her stepson, Joseph A. Pruner; that she negotiated the sale to J. P. Speer; that she was at that time regarded as the owner of the property, and that when sold the purchase price was properly divided between Joseph A. Pruner and herself, in accordance with their respective equities.

So that, upon the whole case, we are of opinion that the decree of the circuit court is right and should be affirmed.

*Affirmed.*